# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4134

_____

| | |
|---|---|
| HoJoon James Cha, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * |
| v. | * Appeal from the United States |
| | * District Court for the |
| William J. Henderson, in his official | * District of Minnesota. |
| capacity as Postmaster General of the | * |
| United States Postal Service, | * |
| | * |
| Defendant - Appellee. | * |

_____

Submitted: November 16, 2000

Filed: July 9, 2001

_____

Before LOKEN, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit
Judges.

_____

JOHN R. GIBSON, Circuit Judge.

After a bench trial, the district court found against HoJoon James Cha on his
Title VII race and national origin discrimination claim against the United States Postal
Service. The district court held that Cha established a prima facie case of
discrimination and rejected the postal service's contention that it fired Cha because he
had violated its sexual harassment policy. However, the court found against Cha on the
ultimate question of whether the service discriminated against Cha on the basis of his

race or national origin. Cha appeals, arguing that the district court's finding is clearly erroneous. We affirm the judgment of the district court.

Cha, an American citizen of Korean origin, was hired as a mail processor at Minneapolis's main post office on April 27, 1996. Under postal service regulations, Cha was required to work as a probationary employee for ninety days before becoming a permanent employee. On July 19, 1996, Cha's co-worker, Michael Yacoub, told Cha's supervisor, Randy Bush, that Cha was sexually harassing Yacoub at work and away from work. Yacoub said that Cha was in love with him and had ignored Yacoub's requests not to call him or talk to him. Yacoub said he feared Cha would file complaints against him to have him fired.

Bush told Yacoub to write down all his allegations about Cha. Three days later, Yacoub submitted five pages of notes about things Cha had said and done, including sexually explicit remarks. Bush helped Yacoub retrieve e-mails from Cha. Yacoub also gave Bush tapes from his home answering machine with messages from Cha and copies of yellow post-it notes from Cha that supported Yacoub's claim that Cha was pursuing him. The next day Yacoub gave Bush another page of notes, saying, "Here, it's still–it's still going on, he's still calling me."

Bush interviewed other employees about the situation. LaTonya Taylor said that she had been at Yacoub's apartment when Cha telephoned repeatedly and Yacoub angrily told Cha to stop calling. Taylor also said that Cha was "always watching" her and Yacoub at work. Sandra Nelson said that she had heard Yacoub, at work, telling Cha to leave him alone.

On July 23, 1996, Bush called Cha into his office and told him that he was alleged to have engaged in sexual harassment, that management was looking at the situation, and that "his employment was questionable." According to Bush, Cha talked about his feelings for Yacoub and admitted that he and Yacoub had had verbal

confrontations on the workroom floor. Bush said that Cha told him he was "sexually confused." At trial, Cha denied that he told Bush he was attracted to Yacoub, but he admitted telling Bush he was confused about his sexuality. Cha did not deny telling Bush that he and Yacoub had had a "discussion" at work on the morning of July 18th. Cha said that after "interrogating" him, Bush told him he was "going to get fired."

When Cha returned to Bush's office later that day, Bush fired him. Bush completed the ninety-day performance review of Cha, indicating that Cha was "unacceptable" in the categories of "Work Relations" and "Personal Contact." This was the eighty-eighth day of Cha's ninety-day probationary period.

Cha filed this suit alleging race and national origin discrimination under Title VII, 42 U.S.C. § 2000e-2(a) (1994).

The district court held that Cha had established a prima facie case of discrimination, showing that he was a member of a protected class (Korean-American), that he was qualified for his position, and that he suffered the adverse employment action of being fired. The district court found the circumstances of the firing permitted an inference of discrimination, because Bush had previously been involved in firing an Asian-American probationary employee for absenteeism for failing to call in every day when she was ill with a kidney infection.[1]

The district court determined that the postal service articulated a legitimate, non-discriminatory reason for firing Cha–that he had sexually harassed Yacoub. However, the court also found that the postal service's articulated reason was not worthy of credence. First, the court found that Bush's investigation was inadequate. Although

---

[1]The postal service does not dispute the propriety of the district court's finding of a prima facie case, but it does contend that there was no showing of any impropriety in the firing of the Asian-American woman for absenteeism.

Bush thoroughly documented Yacoub's side of the story, collecting documents and interviewing witnesses, he failed to give Cha a chance to tell his side of the story and failed to examine all the evidence. Because the investigation was unbalanced, the district court held that it "was not conducted responsibly or in good faith and therefore supports an inference of pretext." Furthermore, Bush relied on allegations of Cha's conduct outside the workplace in reaching the decision to fire Cha, and the district court considered this conduct irrelevant to determining whether Cha violated the postal service harassment policy.

The court considered evidence that a non-Asian employee of the Minneapolis post office who was accused of sexually harassing someone at work was not fired, but instead received only counseling and a change of work assignment. The court held that because the other employee had a different supervisor than Bush, the two cases were not similar in all relevant respects. District Court op. at 12-13 (citing Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994); Jones v. Frank, 973 F.2d 673 (8th Cir. 1992); and Tate v. Weyerhaeuser Co., 723 F.2d 598 (8th Cir. 1983)).

Despite the court's rejection of the postal service's proffered reason for firing Cha, the court held that Cha had failed to carry the burden of persuasion to show that the true reason for his firing was race or national origin discrimination. The court relied on our statement in Ryther v. KARE 11, 108 F.3d 832, 837 (8th Cir. 1997) (en banc), that if the elements of a prima facie case "are accompanied by evidence of pretext and disbelief of the defendant's proffered explanation, they may permit the jury to find for the plaintiff. This is not to say that, for the plaintiff to succeed, simply proving pretext is necessarily enough." The district court found that Cha had not adduced sufficient evidence to lead to a finding of discrimination, and it therefore entered judgment for the postal service.

On appeal, Cha does not contend that the district court's rejection of the postal service's proffered explanation for Cha's firing compelled the district court to find for

him as a matter of law.  He concedes that "[u]nder existing case law . . . pretext by itself can sustain, but need not compel a finding of unlawful discriminatory motive."  After the district court issued its opinion in this case, this point was further clarified by the Supreme Court's decision in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 2106 (2000).  There, the Supreme Court reviewed the familiar McDonnell Douglas[2] burden-shifting rules.  The Court stated that once the defendant produces evidence of a reason other than discrimination for the adverse employment action, "the McDonnell Douglas framework," with its burdens and presumptions, disappears, and the only remaining issue is "discrimination vel non." Id. (internal quotation omitted).  If the plaintiff adduces evidence that the employer's proffered reason is false, both the prima facie case and the evidence of pretext are relevant on this ultimate question, and they may suffice to sustain a finding of intentional discrimination. Id. at 2108.  However, proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct."  Id. (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 524 (1993)) (emphasis added).  In other words, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," but it does not necessarily compel such a finding.  Id. at 2109.[3]

---

[2]McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-06 (1973).

[3]The Supreme Court recognized that there will be cases in which a plaintiff establishes a prima facie case and produces some evidence of pretext, but nevertheless fails to make a submissible case of discrimination:

> For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no

We review the district court's findings under the clear error standard, under which we must affirm if the district court's account of the evidence is plausible in light of the entire record. Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985). If there are two permissible views of the evidence, the court's choice between them cannot be clearly erroneous. Id. at 574.

At oral argument, Cha's counsel argued that the showing of pretext was conclusive evidence of race discrimination because the district court did not identify any other motive for the firing. In fact, the district court's opinion is quite clear that Bush took into account Cha's conduct outside of work, which the district court considered to be irrelevant under postal service regulations. The court stated: "Bush admitted at trial that he had no authority to discipline an employee for sexual harassment outside the workplace. Nonetheless, this Court notes that Bush considered Cha's conduct outside the workplace in reaching his decision to terminate Cha." The court then listed five items of Cha's sexual conduct toward Yacoub on which Bush relied in firing Cha, some of which may have occurred outside of work and the rest of which definitely occurred outside of work. The district court reasoned that, since this conduct did not constitute workplace harassment, Bush's reliance on it made his asserted reason for the firing false. Regardless of whether Bush should have relied on sexual conduct between co-workers outside the workplace,[4] the district court's finding

---

discrimination had occurred.

Reeves, 120 S. Ct. at 2109. See Tatom v. Georgia-Pacific Corp., 228 F.3d 926, 932 (8th Cir. 2000); see generally Zimmerman v. Associates First Capital Corp., 251 F.3d 376, 2001 WL 589428, at *4-5 (2d Cir. May 31, 2001) (collecting cases). The district court did not enter summary judgment against Cha or otherwise hold that he had failed to make a submissible case.

[4]We do not opine on whether conduct by co-workers outside the workplace can contribute to a hostile work environment. Cf. Dowd v. United Steelworkers of America, No. 00-2424, 2001 WL 668605, at *6 (8th Cir. June 15, 2001) ("The

-6-

that he did so is certainly an explanation for the firing other than race or national origin discrimination. See Reeves, 120 S. Ct. at 2109 (even employer who gave false reason for action would be exonerated if record revealed that another non-discriminatory reason motivated its decision); Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1337-38 (8th Cir. 1996) (where there was factual dispute whether employer's proffered reasons were false, but plaintiff acknowledged he was discharged for a reason other than age discrimination, summary judgment for employer affirmed).

Cha argues that the district court's finding of no discrimination was clearly erroneous because he presented other compelling evidence of race and national origin discrimination. Cha argues that Yacoub is an Egyptian, rather than an Asian, and that by accepting Yacoub's story and failing to give Cha an equal chance to present his own side, Bush showed he was prejudiced against Cha on the basis of race or national origin. Cha also points to the evidence that Bush terminated another Asian employee, and that another non-Asian employee who committed sexual harassment was not fired.

The district court considered the evidence about Crystal Yung, the other Asian-American probationary employee, who was fired for illness-related absences. The court simply did not consider this incident sufficiently probative to carry Cha's burden of persuasion that his firing was motivated by race or national origin discrimination. Similarly, the court considered the evidence about the non-Asian sexual harasser in the Minneapolis post office who was not fired. The court found that this evidence was not conclusive because the other employee had a different supervisor. The evidence that Bush favored Yacoub, an Egyptian, over Cha, a Korean, does not lead inevitably toward the conclusion that the basis for Bush's preference was the two employees' respective nationalities or races, especially since there was no hint of such favoritism until Yacoub came to Bush complaining that Cha was pursuing him sexually. We

_____

offensive conduct does not necessarily have to transpire at the workplace in order for a juror reasonably to conclude that it created a hostile working environment.").

cannot say that a trier of fact could only reach the conclusion that Bush was motivated by race or national origin prejudice, and we cannot reverse unless we can say that.  See Anderson, 470 U.S. at 574.  If the court had held that Cha's evidence did not suffice to make a triable issue of fact, Cha's argument would be stronger.   As it is, his case proceeded to the trier of fact, who was simply not persuaded that what happened was the result of racial or national origin prejudice against Koreans.

There is no clear error in the district court's finding that Cha did not carry his burden of persuasion.  We affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.